**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**DAVID LAWLER**,

                 **Plaintiff,**                 3:09-cv-1405
                                                          (GLS)

                 **v.**

**MICHAEL ASTRUE**, Commissioner of
Social Security,

                 **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Lachman, Gorton Law Firm | PETER A. GORTON, ESQ. |
| P.O. Box 89 | |
| 1500 East Main Street | |
| Endicott, NY 13761-0089 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | MARIA P. FRAGASSI |
| United States Attorney | SANTANGELO |
| 100 South Clinton Street | Special Assistant U.S. Attorney |
| Syracuse, NY 13261 | |
| | |
| Mary Ann Sloan | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff David Lawler challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) and seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl., Dkt. No. 1.) Upon reviewing the administrative record and carefully considering the arguments, the court affirms the Commissioner's decision.

## II. Background

On December 28, 2005, Lawler filed applications for DIB and SSI under the Social Security Act (the Act), alleging disability since January 30, 2002. (Tr.[1] at 14.) After his application was denied, Lawler requested a hearing before an Administrative Law Judge (ALJ), which was held on March 14, 2008. (*Id.*) On September 3, 2008, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final decision upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 6-8, 11-26.)

Lawler commenced the present action by filing a complaint on

---

[1] "(Tr. )" refers to the page of the Administrative Transcript in this case. (*See* Dkt. No. 12.)

2

December 18, 2009, seeking review of the Commissioner's determination. (Compl., Dkt. No. 1.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (Dkt. Nos. 12, 13.)  Each party, seeking judgment on the pleadings, filed a brief.  (Dkt. Nos. 16, 19.)

### III.  Contentions

Lawler contends the Commissioner's decision is not supported by substantial evidence.[2]  Specifically, Lawler claims the ALJ: (1) erred in evaluating his intellectual deficiencies; and (2) failed to appropriately determine his Residual Function Capacity ("RFC").  (*See* Dkt. No. 16 at 1, 5-16.)  The Commissioner counters that substantial evidence supports the ALJ's decision.  (*See generally* Dkt. No. 19.)

### IV.  Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations.  (*See* Dkt. No. 16 at 1-5; Dkt. No. 19 at 2-7.)

### V.  Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here.  For a

---

[2]  Lawler does not contest the ALJ's findings with respect to his physical disabilities. (*See* Dkt. No. 16 at 4.)

3

full discussion of the standard and the five-step process used by the Commissioner in evaluating whether a claimant is disabled under the Act, the court refers the parties to its previous opinion in *Christiana v. Comm'r Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Intellectual Deficiency

Lawler claims the ALJ erred when she failed to find: (1) "any learning disability or limited intellectual function as a severe condition"; and (2) that Lawler met listing 12.05(C). (Dkt. No. 16 at 5-10.) Although imprecisely stated, the essence of Lawler's argument is that his mental retardation is sufficiently severe to qualify under either 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05(C) or (D).[3] The court disagrees.

Mental retardation "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05. To satisfy listing 12.05(C), Lawler must demonstrate he suffers from "[a]

---

[3] Lawler does not allege that he qualified under sections 12.05(A) or (B), and thus, the court need not discuss these sections. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05(A), (B).

4

valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* § 12.05(C).  Alternatively, Lawler could qualify under listing 12.05(D) if he had:

> A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: (1) [m]arked restriction of activities of daily living; or (2) [m]arked difficulties in maintaining social functioning; or (3) [m]arked difficulties in maintaining concentration, persistence, or pace; or (4) [r]eapeted episodes of decompensation, each of extended duration.

*Id.* § 12.05(D).  While "standardized intelligence tests may provide data that help verify the presence of mental retardation," they "are only part of the overall assessment," *id.* § 12.00(D)(6)(a), and may be rejected if they are "inconsistent with the record." *Baszto v. Astrue*, 700 F. Supp. 2d 242, 248 (N.D.N.Y. 2010).  Moreover, reliance "upon the opinions of both examining and non-examining State agency medical consultants [is permissible], since such consultants are deemed to be qualified experts in the field of social security disability." *Id.* at 249 (citations omitted).

Here, the ALJ found Lawler's impairments did not qualify under listing 12.05.  (Tr. at 19-21.)  In so doing, the ALJ discounted Dr. Mary Ann Moore's opinion—which placed Lawler's verbal IQ at 69, performance IQ at

5

67, and full scale IQ at 65—because it was inconsistent with other evidence in the case.  (*Id.* at 18-19, 241.)  Notably, the state agency review physician opined that Dr. Moore's IQ results were "likely to be an underestimate of [Lawler's] true abilities" due to his "daily marijuana abuse" and the fact that "he is able to complete most basic adult ADLs."  (*Id.* at 241.)  Indeed, the effect of Lawler's daily marijuana use was a significant factor the ALJ considered because "[h]is symptoms [were] attributed to psychiatric, cognitive and substance abuse problems," and he had "no period of abstinence of record." (Tr. at 19.)  Although Dr. Moore notes Lawler was smoking "a ball [of marijuana] a day or more if he is stressed," she offers no direct opinion on how this habit impacted the validity of the IQ scores.  (Tr. at 220-24.)  Thus, the ALJ's determination that Dr. Moore's IQ scores were invalid was appropriate.  (Tr. at 21.)

Even if Lawler had a qualifying IQ score, the record shows he was able to complete several activities of daily living, including traveling alone, shopping for groceries, doing his own laundry, cleaning, preparing food, paying his bills, spending time with others, talking on the phone and visiting friends regularly.  (Dkt. No. 19 at 13 (citing Tr. at 69-73, 345.))  He also stated he enjoyed doing models, playing video games and watching

6

movies. (Tr. at 72.) And, despite his contention that he was unable to maintain a job "for any significant or lengthy period of time," (Dkt. No. 16 at 8), Lawler previously stated he worked as a machine operator for three years, "and for more than a year as a laborer running packing equipment in a factory."[4] (Dkt. No. 19 at 13 (citing Tr. at 50, 60, 79, 83.))

In sum, the ALJ found that Lawler did not meet the criteria for listing 12.05(C)—and consequently 12.05(D)—since he did "not have a valid verbal, performance, or full scale IQ of 60 through 70." (Tr. at 21.) Having reviewed the remainder of the evidence, the court concludes the ALJ's finding—that Lawler's "mental impairments do not meet or medically equal the requirements of listings 12.04, 12.05 or 12.09"—is supported by substantial evidence and is therefore affirmed. (Tr. at 19.)

## B.  RFC Determination

Lawler next claims the ALJ "improperly found that [his] psychiatric

---

[4] In some respects Lawler's counsel mischaracterized the evidence. For example, he states that "[h]e has difficulty doing his hobbies because he gets frustrated." (Dkt. No. 16 at 8.) Yet a review of the medical report shows what Lawler actually said was that he got frustrated on one occasion when he attempted to install a windshield on a model car. (*See* Tr. at 222.) Likewise, Lawler avers "the consultative examiner found that the plaintiff smoked marijuana only when he is stressed, Tr. 221." (Dkt. No. 16 at 9.) However, page 221 states that Lawler "continue[s] to smoke marijuana approximately a ball a day or more if he is stressed." (Tr. at 221.) A similar misstatement appears in the discussion of Lawler's ability to complete the social security paperwork. (*Compare* Dkt. No. 16 at 8, *with* Tr. at 86.) While these inaccuracies were presumably unintentional, the court is nonetheless skeptical of, and ultimately unpersuaded by, these mischaracterizations.

impairments produced no functional impairments." (Dkt. No. 16 at 10.) However, as the Commissioner aptly notes, what the ALJ actually found is that Lawler was "capable of the basic mental demands of competitive, remunerative, unskilled work." (Tr. at 21.) It follows that Lawler's second claim, which is premised on a finding "of no non-extertional impairments," is meritless. (Dkt. No. 16 at 10-16.) Nevertheless, the court reviews the ALJ's RFC assessment to ensure it is supported by substantial evidence.

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence[5] in the record. *See* 42 U.S.C. 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, the ALJ's decision examined the relevant factors in reaching an

---

[5] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotations omitted).

RFC determination—relying heavily on Lawler's ability to complete the activities of daily living despite abusing marijuana on a daily basis. (Tr. at 21-24.) Additionally, the ALJ considered, and ultimately discredited, Lawler's testimony with respect to the "intensity, persistence and limiting effects of [his] symptoms."[6] (Tr. at 23-24.) Notwithstanding Lawler's selective citations to mere scintillas of evidence which support his claim, (*see* Dkt. No. 16 at 10-16), the record as a whole demonstrates the ALJ's RFC assessment is supported by substantial evidence and is thus conclusive. *See Alston*, 904 F.2d at 126; *Perez*, 77 F.3d at 46.

## C. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Lawler's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this

---

[6] Despite repeatedly admitting to daily use, Lawler testified "he smokes marijuana only 1-2 times per month." (Tr. at 23.)

9

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 23, 2012
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court